UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GREIBY JANAKY MEDINA,

                        Plaintiff,

                -against-

HUNTER COLLEGE OF THE CITY
UNIVERSITY OF NEW YORK, *et al.*,

                      Defendants.
-------------------------------------------------------------------X

**REPORT &
RECOMMENDATION**

**25-CV-4275 (JHR) (JW)**

**To the Honorable Jennifer H. Rearden, United States District Judge:**

Plaintiff Greiby Janaky Medina ("Medina"), proceeding *pro se*, brings this action against Hunter College of the City University of New York ("CUNY"), and several other defendants (who have not been served). Medina asserts she suffered discrimination, retaliation, and a hostile work environment in violation of the Americans with Disability Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA"), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and New York state law. CUNY has moved to dismiss the complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, this Court recommends **GRANTING** in part and **DENYING** in part CUNY's motion to dismiss.

## BACKGROUND

### A. Procedural history

On January 27, 2025, Plaintiff filed a complaint against Defendants, including CUNY, in New York State Supreme Court. Dkt. No. 1-1 ("Compl."). On May 14,

2025, CUNY received a copy of the summons and complaint in the state court action. Dkt. No. 1.  On May 21, 2025, CUNY removed the action to federal court pursuant to Rule 81(c) of the Federal Rules of Civil Procedure.  Dkt. No. 1.

On June 13, 2025, CUNY filed a memorandum of law in support of its motion to dismiss and supporting papers.  Dkt. Nos. 17–19.  On August 28, 2025, Plaintiff filed an opposition to CUNY's motion to dismiss.  Dkt. No. 31.  On October 23, 2025, CUNY filed a reply in support of its motion to dismiss.  Dkt. No. 36.  The Court considers CUNY's motion to dismiss fully briefed.

While the complaint names eleven other Defendants, only CUNY has been served with the complaint.

### B.  Factual background

The following facts are primarily drawn from the complaint and are accepted as true for the purposes of this motion.  Because Medina is proceeding *pro se*, the Court also considers allegations made for the first time in her opposition brief.  See Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").  The Court only recounts facts relevant to CUNY's motion to dismiss.

Plaintiff is a resident of New York City and a former student at CUNY's Hunter College.  Compl. ¶ 4. While at Hunter College, Medina registered with the Office of AccessABILITY in August 2023 due to her documented disabilities of

obsessive-compulsive disorder ("OCD"), attention-deficit/hyperactivity disorder ("ADHD"), and cerebral palsy.  Id.; Dkt. No. 31 ("Opp.") at 3.

### a. Intimate partner violence allegations

On or around September 25 to October 10, 2024[1], Plaintiff "reported an incident of intimate partner violence [with Plaintiff's ex-partner] to Hunter College's Title IX office and sought assistance, including enforcement of a Temporary Order of Protection (TOP)."  Compl. ¶ 9.  Despite her reports, the Title IX office "failed to act, investigate, or enforce the protections required under federal law, allowing [her ex-partner] to maintain contact and influence on campus."  Id. at ¶ 10.  Hunter College ignored Plaintiff's "repeated pleas for help and failed to provide accommodations" or to address "the ongoing discrimination and retaliation."  Id. at ¶¶ 11, 15.  The office also allegedly ignored Plaintiff's "emails and other requests for assistance."  Id. at ¶ 17.

The complaint further asserts that Nicholas Di Carlo[2], an adjunct professor at Hunter College, "demonstrated gross misconduct" by texting Plaintiff's ex-partner "during the period of reported intimate partner violence, despite knowledge of the Temporary Order of Protection."  Compl. ¶ 12.  Di Carlo allegedly texted students "at all hours of the night" and used his authority over students to "manipulate and

---

[1] The complaint alleges that the incident occurred in September or October 2025. However, given the action was filed on May 21, 2025, and based on a review of Plaintiff's New York State Division of Human Rights complaint (see Dkt. No. 19-1), the Court construes the year the alleged incident occurred as 2024, not 2025.
[2] While Mr. Di Carlo is named as a Defendant in this case, he has not yet been served.

control situations for their personal benefit, including fostering a toxic environment of fear and mistrust." Id. at ¶¶ 13–14. Di Carlo also allegedly "collud[ed]" with Plaintiff's ex-partner and other students and "leverage[ed] his authority" over students so they would side with him and protect his employment. Id. at ¶¶ 20–21. This caused Plaintiff emotional distress and "compromised [her] education." Id. at ¶ 22.

Plaintiff asserts that Hunter College "failed to exercise reasonable care in hiring, training, and supervising Nicholas Di Carlo" and "exhibited deliberate indifference by failing to take action against Plaintiffs' [ex-partner] or those complicit in the harassment." Id. at ¶¶ 30, 35. Plaintiff also broadly avers that "Defendants" created a hostile educational environment by "allowing Di Carlo's misconduct, ignoring Plaintiff's disability accommodations, and failing to act on Plaintiff's reports of violence and harassment," which "severely interfered" with Plaintiff's access to education and participation in campus life. Id. at ¶¶ 33–34.

### b.  Denial of disability accommodations

In 2023, Plaintiff requested and received accommodations for her documented disabilities by the Office of AccessABILITY. Compl. ¶ 15.  Plaintiff received the following accommodations: flexible deadlines for assignments, extended time for exams, assistance with classroom participation, academic support for note-taking and executive function, and access to a disability desk for mobility and posture needs. Opp. at 5, 8.  While CUNY approved these accommodations, Plaintiff alleges faculty at Hunter College did not allow her to utilize the accommodations.

For instance, Plaintiff asserts that Di Carlo "ignored" Plaintiff's disability accommodations "outlined in Plaintiff's disability letter" and "failed to provide required modifications and support" while she was a student in Di Carlo's class. Compl. at ¶¶ 18–19; Opp. at 8.  The complaint and opposition do not detail which accommodations Di Carlo "ignored."  See id.; Opp. at 8.  Other Hunter College staff, such as Stacey Lawrence and Dr. Robyn Brown Manning[3], also "knowingly disregarded these accommodations," including denying Plaintiff extensions, use of her disability desk, and peer support.  Opp. at 8, 15.

Although unclear as to timeline, Plaintiff alleges that she founded a peer group on campus called Disability Rights Now to advocate for disabled students on campus. Opp. at 22.

Plaintiff also asserts that Hunter College's dean "retaliated against Plaintiff by filing a false welfare report with government authorities, despite no evidence of neglect or harm, in an attempt to shield the college from accountability and create a narrative of due diligence."  Compl. at ¶ 40.  She also alleges that CUNY pressured Plaintiff into withdrawing from campus and fired her from her position at the Hunter College library.  Opp. at 5.

---

[3] Dr. Robyn Brown Manning is named as a Defendant in this case, but has not been served.

## LEGAL STANDARD

### C. Rule 12(b)(1)

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.  If subject matter jurisdiction is lacking, the action must be dismissed."  Biener v. Credit Control Servs., Inc., No. 21 Civ. 2809 (KMK), 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (citations omitted).  "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  Id. "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Id. (citing Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), aff'd, 561 U.S. 247 (2008)).

### D. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."

6

Twombly, 550 U.S. at 558.  Although the Court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, Steginsky v. Xcelera Inc., 741 F.3d 365, 368 (2d Cir. 2014), that tenet is "inapplicable to legal conclusions."  Ashcroft, 556 U.S. 662, 678.

"*Pro se* plaintiffs receive special solicitude from courts.  Courts must 'liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest.'"  Robinson v. US Dep't Just. US DEA, No. 19 Civ. 459 (AT), 2019 WL 2603530, at *1 (S.D.N.Y. June 24, 2019) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007)).  "However, even for a *pro se* plaintiff, 'conclusory allegations masquerading as factual conclusions [] are insufficient to defeat a motion to dismiss.'"  Id. (quoting Jackson v. Cty. of Rockland, 450 F. App'x 15, 19 (2d Cir. 2011)).

## DISCUSSION

Plaintiff asserts various causes of action under federal and New York state law.  The Court addresses each claim in turn.

### A. ADA claims

#### a. ADA discrimination claim

Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To state a claim under Title II, the plaintiff must allege that (1) the plaintiff is a qualified individual with a

7

disability; (2) the defendant is subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability. Shomo v. City of New York, 579 F.3d 176, 185 (2d Cir. 2009) (citation omitted).

The third element of a Title II claim can take "any of the three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation.'" Hamilton v. Westchester Cnty., 3 F.4th 86, 91 (2d Cir. 2021) (citation omitted); see also Meekins v. City of N.Y., No. 06 Civ. 6473 (SAS), 524 F.Supp.2d 402, 406–07 (S.D.N.Y. 2007). In asserting a failure to accommodate claim, a plaintiff must show that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) [a defendant] covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) [defendant] has refused to make such accommodations." Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004).

Here, Plaintiff proceeds solely under a failure-to-accommodate theory to allege the discrimination element of the ADA claim. First, there appears to be no dispute that Plaintiff, who suffers from "OCD, ADHD, and cerebral palsy," which "substantially limit[s] major life activities like concentrating, sleeping, and processing information," qualifies as an "individual with a disability" under Title II. Opp. at 3. Second, while CUNY asserts that it is "unclear" whether CUNY is subject

to the ADA (see Dkt. No. 18 at 5, n. 5), CUNY does not put forth any arguments disputing that it is not subject to the ADA. See Dkt. No. 18 at 5 n.5. Third, CUNY does not address whether Plaintiff sufficiently pleads that she could perform "the essential functions" as a student with reasonable accommodations. See Dkt. No. 36 at 2–3. Thus, the only outstanding question for this Court to resolve is whether Plaintiff has plausibly alleged that CUNY refused to make such accommodations. The Court finds that Plaintiff has met her burden.

CUNY argues that Plaintiff does not sufficiently allege discrimination under a failure-to-accommodate theory because the complaint does not assert that Plaintiff was denied any of the accommodations outlined in the letter. Dkt. No. 36 at 2–3. After a careful review of Plaintiff's complaint and opposition, the Court finds otherwise. For instance, Plaintiff asserts that she requested and was granted the following accommodations by the Office of AccessABILITY in 2023: flexible deadlines for assignments, extended times for exams, assistance with classroom participation, and academic support for note-taking and executive function, and access to a disability desk. Opp. at 4, 8. Despite this, CUNY faculty denied Plaintiff extensions, use of her disability desk, and peer support. Opp. at 8, 15. As such, the Court finds that Plaintiff has plausibly stated a discrimination claim under a failure-to-accommodate theory.

The Court therefore recommends that the motion to dismiss the ADA discrimination claim be **DENIED**.

9

### b. ADA retaliation claim

"[T]he elements of a retaliation claim under [] the ADA are '(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" Weixel v. Bd. of Educ. of N.Y.C., 287 F.3d 138, 148 (2d Cir. 2002) (citation omitted).  A plaintiff can satisfy the fourth element—a causal connection—by "(a) indirectly showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly though other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." Freckleton v. Mercy Coll. NY, No. 22 Civ. 1985 (KMK), 2023 WL 2648827, at * 11 (S.D.N.Y. Mar. 27, 2023) (citing Romano v. A360 Media, LLC, No. 20 Civ. 8988 (LTS), 2023 WL 348459, at *10 (S.D.N.Y. Jan. 20, 2023)).

Further, "[a]s a threshold matter, courts in this Circuit have held that an activity comprising a plaintiff's failure-to-accommodate claim, cannot also constitute a protected activity such as that required in retaliation claims." Vega v. Dep't of Educ., No. 18 Civ. 6221 (ER), 2020 WL 1505564, at *10 (S.D.N.Y. Mar. 30, 2020).

Because Defendant does not appear to dispute that Plaintiff has met the second element—that CUNY knew plaintiff was involved in protected activity—the Court will assess the remaining three factors.

First, Plaintiff sufficiently alleges that she engaged in a protected activity, which is an "action taken to protest or oppose statutorily prohibited discrimination." Natofsky v. City of New York, 921 F.3d 337, 354 (2d Cir. 2019) (citation omitted). Plaintiff's activity of founding "Disability Rights Now, a peer group advocating for disabled students on campus" appears to fit squarely within this broad definition. See Opp. at 22. However, Plaintiff's remaining activities do not qualify as protected activity. For one, most of her activities appear to "be premised upon [Plaintiff's] request for an accommodation" and should therefore not be considered for the purposes of the retaliation claim. Daley v. Cablevision Sys. Corp., No. 12-6316 (NSR), 2016 WL 880203, at *7 (S.D.N.Y. Mar. 7, 2016). These activities include Plaintiff registering with the AccessABILITY office requesting accommodations, requesting that her accommodations be enforced, and filing internal complaints when her accommodations were denied. Opp. at 5–6, 16–17. Lastly, Plaintiff reporting intimate partner violence to the Title IX office does not constitute protected activity under the ADA since it does not relate to disability.

Further, Plaintiff sufficiently asserts an adverse action by alleging that CUNY pressured Plaintiff into withdrawing from campus and fired her from her position at Hunter College's library. Opp. at 5. However, Plaintiff's other allegations of CUNY faculty denying her accommodations "amounts to an impermissible attempt to bootstrap her reasonable accommodation claim into a retaliation claim." Pinto v. New York City Admin. for Child.'s Serves., No. 18 Civ. 1852 (KBF), 2018 WL 4333990, at *11 (S.D.N.Y. Sept. 11, 2018).

However, Plaintiff's ADA retaliation claim falters for failure to assert a causal connection between the protected activity and the adverse action. Here, Plaintiff merely alleges causation was "direct" because the alleged adverse actions "followed closely" after Plaintiff engaged in protected activity, such as accommodation requests and complaints. Opp. at 17. While the Court agrees with Plaintiff that a causal connection can be satisfied by a showing of temporal proximity, Plaintiff's failure to provide dates—exact or approximate—of when these events occurred is fatal to her complaint. "[W]ithout a clear timeline of the events[,] a court is unable to determine whether the protected activity and the purported adverse action were close enough in time to allow for an inference of causation." Washburn v. Kingsborough Cmty. Coll., No. 20 Civ. 0395 (DLI) (MMH), 2023 WL 2682521, at *9 (E.D.N.Y. Mar. 29, 2023) (citing Cowan v. City of Mount Vernon, No. 14 Civ. 8871 (KMK), 2017 WL 1169667, at *12 (S.D.N.Y. Mar. 28, 2017)).

Thus, Defendant's motion to dismiss the ADA retaliation claim should be **GRANTED**.

## B. Title IX claims

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of gender in educational programs and activities receiving federal financial assistance, providing, with certain exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX was "enacted to

supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities." Doe v. Columbia Univ., 831 F.3d 46, 53 (2d Cir. 2016). There is no dispute that Title IX applies to CUNY.

Federal courts have long recognized an implied private right of action under Title IX. See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255 (2009); Hayut v. State Univ. of New York, 352 F.3d 733, 749–50 (2d Cir. 2003). It is also well established that courts interpret "Title IX by looking to the body of law developed under Title VI, as well as the caselaw interpreting Title VII." Yusuf v. Vassar Coll., 35 F.3d 709, 714 (2d Cir. 1994) (citations omitted).

Plaintiff asserts a retaliation claim and hostile educational environment claim under this statute. The Court addresses each below.

### a. Title IX retaliation claim

"[R]etaliation against individuals because they complain of sex discrimination is intentional conduct that violates the clear terms of [Title IX]." Jackson v. Birmingham Bd. Of Educ., 544 U.S. 167, 183 (2005) (cleaned up). To state a Title IX retaliation claim, a complaint must allege "(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 91 (2d Cir. 2011) (citation omitted). "Even if the agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice." Id. at 92 (citing Gordon v. N.Y.C. Bd. of Educ.,

13

232 F.3d 111, 113–14 (2d Cir. 2000)).  An adverse action is an action that "could well dissuade a reasonable [person] from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). With respect to the causation element, a plaintiff claiming retaliation is required to prove only that "retaliatory motive play[ed] a part in adverse [] actions[,]" not that it was the "sole cause."  Papelino, 633 F.3d at 92 (citing Terry v. Ashcroft, 336 F.3d 128, 140–41 (2d Cir. 2003)).  "Close temporal proximity between the plaintiff's protected activity and the . . . adverse action may in itself [be] sufficient to establish the requisite causal connection."  Id.

Further, at the pleading stage, "a plaintiff need not plead facts giving plausible support to the 'ultimate question' of whether an adverse action was attributable to the discrimination; rather, the facts need only give plausible support to a 'minimal inference' of discriminatory motivation."  Bailey v. New York Law School, No. 16 Civ. 4283 (ER), 2017 WL 835190, at *7 (S.D.N.Y. March 1, 2017) (citing Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)); see also Dawson v. N.Y.C. Transit Auth., 624 Fed.Appx. 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face ....").

The Court finds that Plaintiff has met her "exceedingly low burden" of pleading a Title IX retaliation claim.  First, Plaintiff alleged that she engaged in several protected activities, including reporting intimate partner violence to CUNY's Title IX office and "requesting enforcement of accommodations that overlapped with gender-

based safety needs." Opp. 25–26.   Second, Plaintiff adequately alleged that CUNY was aware of Plaintiff's protected activity since she reported it to the Title IX office. Third, Plaintiff sufficiently pleads that CUNY engaged in adverse school-related actions against her, including terminating Plaintiff from her library position on campus, failing to separate Plaintiff from her ex-partner, and refusing to enforce safety measures for Plaintiff.  Opp. at 6, 26.

Lastly, Plaintiff meets her *de minimis* burden of alleging causation by asserting that these adverse-school related actions occurred "within weeks" of Plaintiff engaging in protected activity.  Opp. at 27.  Accepting Plaintiff's allegations as true, the Court concludes that these events are sufficiently close in time to allow for an inference of causation.  See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.").

For those reasons, the Court recommends that Defendant's motion to dismiss the Title IX retaliation claim be **DENIED**.

### b. Title IX hostile educational environment claim

Title IX provides a remedy to a student who is subjected to sexual harassment by a teacher or professor at an educational institution receiving federal funds.  See Hayut, 352 F.3d at 749–50; Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 280 (1998).  For an educational facility to be liable, however, the plaintiff must establish

that a school official with "authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge" of the discrimination and failed to adequately respond.  Gebser, 524 U.S. at 290.

A school may be held liable under this theory if it was "deliberately indifferent to sexual harassment, of which [it] ha[d] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999).  "Determining whether conduct is severe or pervasive enough to create a hostile [] environment involves a question of fact and is generally inappropriate to determine at the pleadings stage of a litigation." Harding v. Dorilton Cap. Advisors LLC, No. 22 Civ 01726 (CM), 635 F.Supp.3d 286, 301 (S.D.N.Y. 2022) (citation omitted).  A motion to dismiss a hostile environment claim predicated on a failure to plausibly allege severe or pervasive harassment is thus properly denied when, based on the facts alleged in the complaint, the defendant is not "obviously free from potential liability." Gartenberg v. Cooper Union, 24 Civ. 2669 (JPC), 765 F. Supp.3d 245, 265 (S.D.N.Y. 2025) (citation omitted). Lastly, the teacher-on-student harassment forming the basis for a Title IX claim must be "gender-oriented." Davis, 526 U.S. at 651.

The Court finds that Plaintiff's hostile educational environment claim fails for two reasons.  First, Plaintiff has failed in meeting her low burden of alleging harassing conduct that states a Title IX claim.  Plaintiff asserts that Di Carlo denied her disability accommodations; texted students, including Plaintiff's ex-partner, "at

all hours of the night;" and colluded with Plaintiff's ex-partner despite knowledge of the Temporary Order of Protection.  See Compl. ¶¶ 13–14, 20–21.  But even read in the light most favorable to *pro se* Plaintiff, the alleged facts are too conclusory and attenuated to plausibly allege harassment as to Plaintiff.  For instance, Plaintiff does not allege how she knows that Di Carlo was texting students "at all hours of the night," or what he was texting students that would rise to harassing conduct.  Further, the complaint includes no facts as to how Di Carlo engaging with other students (even if inappropriately) amounts to harassing conduct of Plaintiff.  Lastly, the complaint does not allege any action taken by Di Carlo and Plaintiff's ex-partner in connection with the alleged collusion.

Second, Plaintiff fails in alleging that the teacher-on-student harassment forming the basis of her complaint was "gender-oriented."  To be considered gender-based, the harassing conduct must "support an inference of discrimination on the basis of sex."  Nungesser v. Columbia Univ, No. 15 Civ. 3216 (GHW), 244 F.Supp.3d 345, 362–363 (S.D.N.Y. 2017) ("Nungesser II") (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)) (collecting cases).  Further, "[i]n evaluating whether actions against a particular plaintiff were discriminatory, 'courts have consistently emphasized that the ultimate issue is the reasons for the *individual plaintiff's* treatment.'"  Id. (citation omitted) (emphasis in original).  "In other words, was Plaintiff being harassed because of her gender or for some other reason?"  Id. (citation omitted).

17

Here, Plaintiff fails to plead facts giving rise to a plausible inference that CUNY's actions were motivated by Plaintiff's gender. Construing Plaintiff's complaint and opposition papers liberally, Plaintiff alleges that CUNY created a hostile educational environment by "allowing Di Carlo's misconduct" (as discussed more fully *supra*) and "and failing to act on Plaintiff's reports of violence and harassment." Compl. ¶ 33. Plaintiff argues these acts were gender-oriented because her "disclosures of sexual violence were mocked, minimized, and used as leverage to question [her] integrity as a woman and as a student." Opp. at 30. But beyond this conclusory allegation, Plaintiff's complaint is devoid of specific allegations that state a plausible inference that Di Carlo's acts were *because of Plaintiff's gender*. See Nungesser v. Columbia University, No. 15 Civ. 3216 (GHW), 169 F.Supp.3d 353, 366 (S.D.N.Y. 2016) ("Nungesser I") (dismissing hostile environment claim for failure to plead facts giving rise to a plausible inference that plaintiff's actions were motivated by his gender); Bowman v. Shawnee State Univ., 220 F.3d 456,464 (6th Cir. 2000) (holding plaintiff was not subjected to a hostile environment for purposes of Title VII because "[w]hile he may have been subject to intimidation, ridicule, and mistreatment, he has not shown that he was treated in a discriminatory manner because of his gender.").

As such, the Court recommends that the motion to dismiss the Title IX hostile environment claim be **GRANTED**.

### C. State tort claims

Plaintiff asserts several state law tort claims—negligent hiring and negligent supervision, negligent infliction of emotional distress, and breach of fiduciary duty—against CUNY.

New York Education Law § 6224(4) provides the following:

> [E]xclusive jurisdiction is hereby conferred upon the court of claims to hear, audit and determine the claims of any person against the City university of New York ["CUNY"]... (b) in connection with causes of action sounding in tort alleged to have been committed by a senior college of such university or any officer, agent, servant or employee of a senior college of such university in the course of his employment on behalf of such university.

Hunter College is a "senior college" within the City University system. N.Y. Educ. Law § 6202(5). Relying on this language, courts in this District have consistently held that the New York Court of Claims has exclusive jurisdiction over such tort claims brought against CUNY. See Sank v. City of New York, No. 94 Civ. 253 (RWS), 2002 WL 523282, at *9 (S.D.N.Y. Apr. 5, 2002) (holding that the New York Court of Claims has exclusive jurisdiction over breach of contract claim against New York's "senior colleges."); See Chinn v. City Univ. of New York School of Law at Queens Coll., 963 F. Supp. 218, 227 (E.D.N.Y. 1997) (dismissing tort IIED claim due to lack of jurisdiction against CUNY).

The Court therefore recommends that CUNY's motion to dismiss Plaintiff's state law tort claims be **GRANTED**. If Plaintiff chooses to act in the Court of Claims, she should name CUNY, and not Hunter College, as the real party in interest. See

Hamid v. John Jay Coll. of Crim. Just., No. 99 Civ. 8669 (WK), 2000 WL 666344, at *8 (S.D.N.Y. May 19, 2000).

### D. NYSHRL and NYCHRL claims

Plaintiff asserts claims under "state anti-discrimination and anti-harassment statutes." Compl. ¶ 1. She clarifies in her opposition that these are references to "New York State Human Rights Law (NYSHRL), New York City Human Rights Law (NYCHRL), and analogous statutory protections." Opp. at 27. Construing Plaintiff's complaint liberally, the Court finds that Plaintiff is asserting discrimination, retaliation, and hostile environment claims under NYSHRL and NYCHRL.

Defendant contends that Plaintiff's NYSHRL claims should be dismissed pursuant to Rule 12(b)(1) because they are barred by the election of remedies since Plaintiff filed a complaint with the New York State Division of Human Rights. See Dkt. No. 19-1. Further, Defendant argues that Plaintiff's NYCHRL claims against CUNY are barred by sovereign immunity pursuant to the Eleventh Amendment. Dkt. No. 36 at 9. While the Court does not completely agree with CUNY's analysis, the Court ultimately finds that the NYSHRL and NYCHRL claims are squarely barred by sovereign immunity and should be dismissed pursuant to Rule 12(b)(1).

"[A]s a matter of law, under the Eleventh Amendment, CUNY is not subject to suit in federal court for alleged violations of state law," including NYSHRL and NYCHRL claims. Humphries v. City Univ. of New York, No. 13 Civ. 2641 (PAE), 2013 WL 6196561, at *11 (S.D.N.Y. Nov. 26, 2013) (citing Clissuras v. City Univ. of N.Y., 359 F.3d 79, 81 n.2 (2d Cir. 2004)). See also Clissuras, 359 F.3d at 83 (affirming

20

dismissal of claims against CUNY on Eleventh Amendment sovereign immunity grounds); Hoffman v. City College of N.Y., 20 Civ. 1729 (PGG), 2021 WL 1226498, at *4 (S.D.N.Y. Mar. 30, 2021) (dismissing NYSHRL and NYCHRL claims against CUNY pursuant to Rule 12(b)(1) on sovereign immunity grounds).  Accordingly, the Court recommends that CUNY's motion to dismiss Plaintiff's NYCHRL and NYSHRL claims be **GRANTED** and the claims **DISMISSED.**

## LEAVE TO AMEND

Generally, "*pro se* litigants should be given leave to amend a complaint if 'a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Munoz–Nagel v. Guess, Inc., No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000).  Moreover, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015).  However, "leave to amend need not be granted when amendment would be futile." See Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016).

As discussed *supra*, the Court finds the (1) state tort law claims (negligent hiring and negligent supervision, negligent infliction of emotional distress, and breach of fiduciary duty) and (2) NYSHRL and NYCHRL claims are uncurable.  Thus, the Court recommends that leave to amend these claims against CUNY be **DENIED**.

However, Plaintiff may be able to allege additional facts or cure flaws in the complaint regarding the following claims against CUNY: (1) ADA retaliation claim and (2) Title IX hostile educational environment claim. The Court therefore recommends that leave to amend these claims against CUNY be **GRANTED**.

## RECOMMENDATION

For the foregoing reasons, this Court recommends that CUNY's motion to dismiss be **DENIED** as to the (1) ADA discrimination and (2) Title IX retaliation claims and **GRANTED** for all other causes of action.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF. Any requests for an extension of time for filing objections must be directed to Judge Rearden. **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**. See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:    New York, New York
          February 11, 2026

                                        *Jennifer E. Willis*
                                        JENNIFER E. WILLIS
                                        United States Magistrate Judge

22